**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **NASIMA AKHTER,** *et al.*, : | |
| : | Case No. 2:23-cv-1374 |
| **Plaintiffs,** : | |
| : | Chief Judge Algenon L. Marbley |
| v. : | |
| : | Magistrate Judge Kimberly A. Jolson |
| **ANTONY J. BLINKEN,** : | |
| **UNITED STATES SECRETARY** : | |
| **OF STATE,** *et al.*, : | |
| : | |
| **Defendants.** : | |

**OPINION & ORDER**

This matter is before this Court on Defendants' Motion to Dismiss, With Prejudice. (ECF No. 4). For the reasons that follow, Defendants' Motion is **DENIED.**

**I. BACKGROUND**

In 2014, Plaintiff Nasima Akhter, a naturalized United States citizen, filed a petition for an immigrant visa on behalf of her son, Plaintiff Shahzad Sauid Hashmi, a citizen and resident of Pakistan. (ECF No. 1 ¶ 19). Plaintiffs Akhter and Hashmi sue Defendants Antony J. Blinken, the United States Secretary of State; Merrick B. Garland, Attorney General of the United States; Michael Solberg, Consul General of the U.S. Embassy in Islamabad, Pakistan; and unnamed consular officials, in their official capacities, to compel Defendants to schedule a visa interview for Plaintiff Hashmi. (*Id.* ¶¶ 1-3).

Generally, the Secretary of State has discretion to carry out the Immigration and Nationality Act ("INA") abroad, 22 U.S.C. § 2651a(a)(1), and is "charged with the administration and enforcement" of laws "relating to [ ] the powers, duties, and functions of diplomatic and

consular officers of the United States." 8 U.S.C. § 1104(a). The Secretary has authority to promulgate regulations governing the "form," "manner," and "place" of visa applications. 8 U.S.C. § 1202(a).

As is relevant here, unmarried adult children of U.S. citizens my seek a "family-preference" visa. 8 U.S.C. § 1153(a); 8 U.S.C. § 1151(b)(2)(A)(i). Before a consular officer may issue such a visa, the U.S. citizen must file a "Petition for Alien Relative (Form I-130)" with the United States Citizenship and Immigration Services (USCIS) to establish a qualifying relationship. 8 C.F.R. § 204.1(a)(1). If the relative is a non-U.S. resident, an approved petition will be sent to the Department of State's National Visa Center ("NVC"), *see* Bureau of Consular Affairs, Department of State, *Immigrant Visa Process: Step 2: Begin National Visa Center (NVC) Processing*,[1] at which point the beneficiary will fill out a DS-260 Online Immigrant Visa and Alien Registration Application to begin the application process, *id.*, *Step 6: Online Application*.[2] The NVC will coordinate with the noncitizen beneficiary of the petition to collect the necessary paperwork and fees. Once the required documents have been collected, the NVC will designate an applicant "documentarily qualified." 22 C.F.R. § 40.1(h). A documentarily qualified applicant is qualified "to apply formally for an immigrant visa," *id.*, which requires "personally appearing before a consular officer and verifying by oath or affirmation the statements contained on . . . Form DS-260." 22 § C.F.R. 40.1(l).

---

[1] Available at https://travel.state.gov/content/travel/en/us-visas/immigrate/the-immigrant-visa-process/step-1-submit-a-petition/step-2-begin-nvc-processing.html (last visited Mar. 18, 2024).
[2] Available at https://travel.state.gov/content/travel/en/us-visas/immigrate/the-immigrant-visa-process/step-5-collect-financial-evidence-and-other-supporting-documents/step-6-complete-online-visa-application.html (last visited Mar. 18, 2024).

Once an applicant is deemed documentarily qualified, and the relevant U.S. Embassy determines an interview appointment is available, the NVC schedules the applicant for a visa interview.  *See* Bureau of Consular Affairs, Department of State, *Immigrant Visa Process: Step 11: Applicant Interview*.[3]  "All immigrant visa applications shall be reviewed and adjudicated by a consular officer." 8 U.S.C. § 1202(b).  And once "a visa application has been properly completed and executed before a consular officer . . . the consular officer must either issue or refuse the visa." 28 C.F.R. § 42.81(a).  The INA, however, places limitations on how many family-preference visas may be issued each year for each of the family-preference categories and the Foreign Affairs Manual indicates that interviews are to be scheduled "in the chronological order of the documentarily complete applicants." 9 FAM 504.1-2(d)(1).

Plaintiff Akhter filed an I-130 Petition for Alien Relative on behalf of Plaintiff Hashmi on November 7, 2014.  (ECF No. 1 ¶ 19).  Almost six years later, in March 2020, the I-130 petition was approved and forwarded to the NVC.  (*Id.* ¶ 20).  Around the same time, the Department suspended visa services due to the COVID-19 pandemic, including at the U.S. Embassy in Islamabad, Pakistan.  *See* Dep't of State, Bureau of Consular Affairs, *Suspension of Routine Visa Servs*.[4]  Embassies began a "phased resumption" of visa services in July 2020.  *Id.*

The NVC completed processing of Plaintiff Hashmi's DS-260 Application Form on October 5, 2020, and designated Plaintiff Hashmi as "documentarily qualified."  (ECF No. 1 ¶ 21). Hearing nothing from the Embassy in Islamabad for several years, Plaintiff Akhter contacted

---

[3] Available at https://travel.state.gov/content/travel/en/us-visas/immigrate/the-immigrant-visa-process/step-5-collect-financial-evidence-and-other-supporting-documents/step-6-complete-online-visa-application.html (last visited mar. 18, 2024).
[4] Available at https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/visas-news-archive/suspension-of-routine-visa-services.html (last visited Mar. 18, 2024).

3

Senator Sherrod Brown's office in January 2023, which requested that the NVC expedite Plaintiff Hashmi's interview on account of Plaintiff's Akhter's age and deteriorating health. (*Id.* ¶ 23). The NVC relayed to Senator Brown's office that the Embassy required a letter from Plaintiff Akhter's doctor, which she provided promptly. (*Id.* ¶¶ 24-25). Nonetheless, in April 2023, the NVC informed Senator Brown's office that Plaintiff's request to expedite was denied. (*Id.* ¶ 26). Now, in March of 2024, no interview has been scheduled—roughly nine and a half years since Plaintiff Akhter first filed her I-130 petition in hopes of being reunited with her son, and three and a half years after Plaintiff Hashmi became "documentarily qualified." In the interim, Plaintiff Akhter's husband has died and her need for a caretaker has increased. (*Id.* ¶ 28). Plaintiff Hashmi is prepared to assume that role for his mother, should he be granted an immigrant visa. (*Id.* ¶ 29).

Plaintiffs filed a petition for writ of mandamus and complaint for declaratory and injunctive relief with this Court on April 20, 2023. (ECF No. 1). They request that this Court compel Defendants to schedule Plaintiff Hashmi's visa interview so that his visa application process can be, at long last, completed. (*Id.* at 1). Defendants filed a Motion to Dismiss the case with prejudice in June 2023, arguing that this Court does not have subject matter jurisdiction over Plaintiffs' claims and that Plaintiffs have otherwise failed to state a claim. (ECF No. 4). Defendants' Motion is now ripe for review.

## II. STANDARDS OF REVIEW

Rule 12(b)(1) authorizes a party to seek dismissal of a case for lack of subject matter jurisdiction. Without subject matter jurisdiction, a federal court is deprived of "authority to hear a case." *Smith v. DeWine*, 476 F. Supp. 3d 635, 650 (S.D. Ohio 2020) (citing *Thornton v. Sw. Detroit Hosp.*, 895 F.2d 1131, 1133 (6th Cir. 1990)). When subject matter jurisdiction is

4

challenged, the burden of establishing subject matter jurisdiction falls on the plaintiff. *Rogers v. Stratton Indus.*, 798 F.2d 913, 915 (6th Cir. 1986).

This Court may dismiss a cause of action under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." Such a motion "is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*, 404 F. 3d 950, 958–59 (6th Cir. 2005). This Court must construe the complaint in the light most favorable to the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F. 3d 430, 434 (6th Cir. 2008). If more than one inference may be drawn from an allegation, this Court must resolve the conflict in favor of the plaintiff. *Mayer v. Mylod*, 988 F. 2d 635, 638 (6th Cir. 1993). This Court cannot dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id*.

### III. LAW & ANALYSIS

Plaintiffs seek relief under both the Mandamus Act, 28 U.S.C. § 1361, and the Administrative Procedure Act (the "APA"), 5 U.S.C. § 706(1). The Mandamus Act provides that "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the Plaintiff." § 1361. Similarly, the APA authorizes a district court to "compel agency action unlawfully withheld or unreasonably delayed." § 706(1).

While "the exact interplay between these two statutory schemes has not been thoroughly examined by the courts, the Supreme Court has construed a claim seeking mandamus under the [Mandamus Act], 'in essence,' as one for relief under § 706 of the APA." *Indep. Min. Co. v.*

5

*Babbitt*, 105 F.3d 502, 507 (9th Cir. 1997) (quoting *Japan Whaling Ass'n v. American Cetacean Soc'y*, 478 U.S. 221, 230 n. 4. (1986)). In other words, "when 'the agency in charge of the adjudication fails to render a decision within a reasonable period of time, as required by § 555(b) of the [APA], the Court has the power to grant a writ of mandamus compelling an adjudication." *Alwan v. Risch*, 2:18-cv-73, 2019 WL 1427909, at *3 (S.D. Ohio Mar. 29, 2019) (Marbley, J.). Because "these claims function together, whereby a District Court compels agency action or inaction under the Administrative Procedure Act through the writ of mandamus," *id.*, "courts apply the same principles and standards both to determine jurisdiction and to assess the merits." *Nelson v. United States*, 107 F. App'x 469, 471 (6th Cir. 2004). This Court "elects to analyze [Plaintiffs'] entitlement to relief under the APA." *Babbitt*, 105 F.3d at 507.

### A. Subject Matter Jurisdiction

Plaintiffs argue that this Court has jurisdiction under the Mandamus Act, §1361, and the APA, § 701, in conjunction with the Federal Question Statute, 28 U.S.C. § 1331. *See Barrios Garcia v. U.S. Dep't of Homeland Sec.*, 25 F.4th 430, 440 (6th Cir. 2022) (noting that "the federal courts' subject-matter jurisdiction in APA cases is bestowed by 28 U.S.C. § 1331, the federal-question jurisdiction statute."). In order "to establish that subject matter jurisdiction is created by a federal question involving either the Mandamus Act or the APA, [Plaintiffs'] must show that these acts would give [them] a right of action" based on their pleadings. *Xu v. Chertoff*, No. 06-CV-15398, 2007 WL 2221401, at *1 (E.D. Mich. July 31, 2007).

### 1. Availability of Judicial Review Under the APA

The APA requires an agency "to conclude a matter presented to it" "within a reasonable time." 5 U.S.C. 555(b). And as mentioned above, the APA authorizes a district court "to compel

6

agency action unlawfully withheld or unreasonably delayed." § 706(1). Agency action includes "an agency rule, order, license, sanction, relief or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13). A "failure to act . . . is simply the omission of an action without formally rejecting a request." *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 63 (2004).

There exists a "strong presumption that Congress intends judicial review of administrative action," *Bowen v. Michigan Acad. Of Family Physicians*, 476 U.S. 667, 670 (1986), except where "statute precludes judicial review" or "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a). In other words, a claim under § 706(1) of the APA can only be sustained "where a plaintiff asserts that an agency failed to take a discrete agency action that it is *required* to take." *Id.* at 64 (emphasis added). Nor can a delay "be unreasonable with respect to action that is not required." *Id.* at 63 n.1; *see also Carson v. United States Office of Special Counsel*, 633 F.3d 487, 491 (6th Cir. 2011) (explaining that mandamus is only available if, among other things, "the defendant has a clear duty to act"). The discretion exception, however, is "very narrow" and "is applicable in those rare instances where 'statutes are drawn in such broad terms that in a given case there is no law to apply.'" *Barrios Garcia*, 25 F.4th at 446 (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410 (1971)).

Defendants argue, albeit through a mandamus lens, that the Department and Embassy have discretion over whether to schedule Plaintiff Hashmi's interview at all. (ECF No. 4 at 11-16). And as a result, in the Government's view, the Embassy's failure to schedule an interview appointment for Plaintiff Hashmi is judicially unreviewable. Plaintiffs, on the other hand, argue that, pursuant to the INA, federal regulations, and agency guidance, Defendants have a non-

7

discretionary duty to schedule an interview, and do so within a reasonable time, as required by the APA. (ECF No. 9 at 5, 7).

Specifically, Plaintiffs filed a Notice of Supplemental Authority with this Court (ECF No. 11) identifying a recent decision from the Eastern District of California, *Iqbal v. Blinken*, 2023 WL 7418353 (E.D. Cal. Nov. 9, 2023), in which a district court concluded that 8 U.S.C. § 1202(b), a section of the INA, imposes:

> a clear nondiscretionary duty on agencies "to conclude a matter presented to it" "within a reasonable time." 5 U.S.C. § 555(b). Thus, defendants have a nondiscretionary duty to adjudicate plaintiffs' immigrant visa petitions within a reasonable time. *Cf. Mugomoke v. Curda*, No. 10-02166, 2012 WL 113800, at *5 (E.D. Cal. Jan. 13, 2012) (default rule of § 555(b) applied when statute did not confer authority on Secretary to not act on an I–485 application). "To hold otherwise would be to sanction the perpetual delay of governmental obligations that are clearly mandated by law." *Liu v. Michael Chertoff*, No. 07-00734, 2007 WL 2119427, at *1 (N.D. Cal. July 23, 2007).

This Court finds the analysis in *Iqbal* persuasive. Section 1202(b) provides that "[a]ll immigrant visa applications shall be reviewed and adjudicated by a consular officer." And while "[c]ourts are split" on whether 1202(b) creates "a mandatory duty to review and adjudicate immigrant visa applications under 1202(b)," the *Iqbal* court joined with "the district courts that have held there is a clear duty." 2023 WL 7418353 at *6. This Court does, too.

Simply put, "the use of the word 'shall' indicates a mandatory nondiscretionary duty to review and adjudicate immigrant visa applications." *Id.*; *see also Gomez v. Biden*, 2021 WL 3663535, at *20 (D.D.C. Aug 17, 2021) (noting that, with respect to § 1202, "while the State Department of course retained discretion to organize its priorities as necessary, it nonetheless remained obligated by Congress to carry out certain functions."). In *Iqbal*, the court acknowledged that decisions about how to allocate resources fall within an agency's discretion but reasoned that

8

"[t]here is a difference between an agency's discretion in deciding how to allocate consular resources and an agency's discretion in deciding whether to resolve an application" at all. *Id.* at *6; *but see Preston v. Ky. Consular Ctr.*, 2022 WL 3593052, at *9 (E.D. Ky. Aug. 22, 2022) (concluding that "the timing and scheduling of interviews [to make a formal visa application] is firmly committed to agency discretion by law.").

And this Court is unpersuaded by the argument that the action required by § 1202(b) is not incumbent on Defendants until a formal visa "application" has been made through appearance "before a consular officer." 22 C.F.R. § 40.1(1).[5] To adopt this reasoning would, as the *Iqbal* court explained, "leave . . . plaintiffs in a catch-22: while they have submitted completed DS-260 Immigrant Visa Electronic Applications and are 'documentarily qualified,' that term merely means they are qualified to 'apply formally for an immigrant visa'" by appearing for an interview that Defendants have refused to schedule for over three and a half years. *Iqbal*, at * 7. Construing the statute to mean that the Embassy has no duty to schedule required interviews would "produce absurd results," *id.*, and leave Plaintiffs with no recourse to have the agency ever review their application, for which they have already paid processing fees. As a result, this Court concludes that it may review the reasonableness of the delay in scheduling Plaintiff Hashmi's interview.

### B. Unreasonable Delay

Having concluded that this Court has jurisdiction to consider Plaintiffs' claim of unreasonable delay, this Court considers whether Plaintiffs have stated a claim. As discussed

---

[5] Plaintiffs argue that 22 C.F.R. 42.81(a) also creates a duty to Plaintiffs at this stage. Section 42.81(a) mandates that "when a visa application has been properly completed and executed before a consular officer . . . the consular officer must either issue or refuse the visa." But this language is distinguishable from the language in 1202(b) in that it specifies the stage of the visa application process to which it applies: after an application has been "completed and executed before a consular officer." Plaintiff Hashmi is not yet at that stage.

9

above, district courts "shall . . . compel agency action unlawfully withheld or unreasonably delayed." § 706(1); *see also* 5 U.S.C. § 555(b) ("With due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it."). Adjudication of a claim of unreasonable delay requires weighing six factors derived from a D.C. Circuit case, *Telecommc'ns Rsch. & Action Ctr. V. F.C.C.*, 750 F.2d 70, 79-80 (D.C. Cir. 1984) ("*TRAC*"):

> (1) the time agencies take to make decisions must be governed by a rule of reason;
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
> (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
> (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
> (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and
> (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

Defendants urge this Court to apply these factors now and conclude that the delay in this case is reasonable, as a matter of law. (ECF No. 4 at 18-19) (citing cases in which similar length delays were found reasonable)). In Defendants' view, this delay is particularly reasonable in light of COVID-related backlogs and the prioritization of Afghan refugees. (*Id.* at 19).

But "district courts have split on whether an unreasonable delay claim in this context is reviewable on the pleadings, or if it must be considered only after discovery." *Zunier v. Blinken*, 3:22-cv-217, at *11 (S.D. Ohio Sep. 22, 2023) (Rice, J.). The Sixth Circuit placed a thumb on the scales in favor of discovery, however, in *Barrios Garcia v. U.S. Dep't of Homeland Sec.*, 25 F.4th 430, 451 (6th Cir. 2022). There, the court pointed favorably to sister circuits' holdings that "[a] claim of unreasonable delay is necessarily fact dependent and thus sits uncomfortably at the motion

10

to dismiss stage and should not typically be resolved at that stage." *Id.* This is because "the mere passage of time alone cannot sustain a claim of unreasonable delay." *Id.* at 452.

Discovery is similarly important here, at least with respect to the first and fourth *TRAC* factors. For example, with respect to the fourth factor, Defendants argue that granting Plaintiffs' request would require the Embassy to catapult Plaintiff Hashmi's pending petition to the front of the line, skipping "ahead of other petitioners who filed an application before [him], but who are also waiting for adjudication." *Calderon-Ramirez v. McCament*, 877 F.3d 272, 275 (7th Cir. 2017). In the Government's view, this line-jumping possibility means that the fourth *TRAC* factor favors denial of Plaintiffs' request because granting it would have a negative effect on competing priorities. (ECF No. 4 at 23-25). But Plaintiffs allege that others who became documentarily complete after Plaintiff Hashmi have already been interviewed. (ECF No. 1 ¶ 32). On a motion to dismiss, this Court must accept these allegations as true. *See Total Benefits*, 552 F. 3d at 434. Presumably to refute this notion, Defendants attached an affidavit to their Motion, in which the Assistant Director of the National Visa Center explains that "the NVC uses the date on which a case was documentarily complete to determine the order in which cases are scheduled for appointments" and that "there are 4,690 pending documentarily complete family preference applicants pending scheduling of an interview" ahead of Plaintiff Hashmi. (ECF No. 4-1). Even were this Court to consider evidence at this stage,[6] neither of these statements directly contradict

---

[6] Defendants cite caselaw in their standard of review section that suggests they intend to make a "factual," as opposed to "facial" challenge to this Court's subject matter jurisdiction. (ECF No. 4 at 9). "Challenges to subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) 'come in two varieties: a facial attack or a factual attack.'" *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 440 (6th Cir. 2012) (quoting *Gentek Bldg. Prod., Inc. v. Sherwin–Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007)). Much like a Rule 12(b)(6) Motion to Dismiss, a facial challenge to subject matter jurisdiction requires taking allegations in the Complaint as true. *Id.* When a defendant mounts a factual attack, however, "the court can actually weigh evidence to confirm the existence of the factual predicates for subject-matter jurisdiction." *Id.* Defendants likely intended this affidavit to be considered as part of a factual challenge to

Plaintiffs' suggestion that Defendants may, at times, consider other factors, or Plaintiffs' contention that people who became documentarily complete after Plaintiff Hashmi have been interviewed already. Were Plaintiffs' contentions borne out, a writ of mandamus from this Court would not necessarily have the line-jumping consequence that Defendants suggest. As a result, Plaintiffs have pleaded sufficient facts to show that the fourth factor may not, in fact, favor denial of their request. The next step in resolving this aspect of the Parties' disagreement is the discovery process.

Likewise, with respect to the first *TRAC* factor, which requires the ordering of agency priorities to follow a "rule of reason," the Sixth Circuit explained that "discovery is critical to understanding whether the [visa] process is a systematic line," as Defendants contend. *Barrios Garcia*, 25 F.4th at 453. The same is true here.

The third and fifth *TRAC* factors—"concerning health, welfare, and prejudice"—are considered together, and do not preclude this Court from concluding that Plaintiffs have stated a claim of unreasonable delay.[7] *Id.* Plaintiffs explain that they have been separated for many years due to the delay, and that Plaintiff Hashmi's father passed away during the wait. Plaintiff Akhter's health is failing and she needs a caretaker, a role that Plaintiff Hashmi stands ready to fill, were he granted a visa. (ECF No. 1 ¶¶ 28-29). Plaintiffs have thus pleaded "'sufficient facts to show that their interests are weighty, implicate health and welfare, and are harmed by'" their "years-long wait." *Barrios Garcia*, 25 F.4th at 452 (quoting *Gonzalez v. Cuccinelli*, 985 F.3d 357, 375 (4th Cir. 2021)).

---

subject matter jurisdiction. But this Court finds that these particular facts do not bear on its conclusion that these claims are justiciable under the APA.

[7] The second and sixth *TRAC* factors are not relevant and undisputedly neutral, respectively. (ECF No. 4 at 20, 26-27; ECF No. 9 at 10-11, 14).

12

## IV. CONCLUSION

For the foregoing reasons, this Court finds that Plaintiffs have stated a claim of unreasonable delay under the APA and Defendants' Motion to Dismiss is hereby **DENIED.**

**IT IS SO ORDERED.**

_____
**ALGENON L. MARBLEY
CHIEF UNITED STATES DISTRICT JUDGE**

**DATE:  March 19, 2024**